NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RALPH M. DAY, SR.,<br><br>Debtor.<br><br>DURIE PROPERTIES, LLC, LOUIS A. CAPAZZI, JR., ANN CAPAZZI, AND CLM MANAGEMENT CORP.,<br><br>Appellants<br><br>v.<br><br>ROBERT B. WASSERMAN, Chapter 7 Trustee,<br><br>Appellee. | Civil Action No. 14-01908 (SRC)<br><br>ON APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br>[CASE NO. 08-18384 (MS)]<br>[ADV. PRO. NO. 13-01959 (MS)]<br><br>OPINION |

**CHESLER**, District Judge

This matter is before the Court on appeal of an order entered by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") in proceedings captioned In re Ralph M. Day, Sr., Case No. 08-18384 (MS). That order and accompanying letter opinion, entered by the late Judge Stern on February 7, 2014, enjoined the Defendant-Appellants from pursuing certain claims in state court against Robert B. Wasserman, the Chapter 7 Trustee for debtor Ralph M. Day, Sr., and the Plaintiff-Appellee here; the order also enjoined Defendant-Appellants from pursuing certain claims against Charles Shaw, an attorney whose law

firm was appointed Special Litigation Counsel to the debtor in bankruptcy and who also served as Special Counsel to the Trustee.  The appeal is now fully briefed,[1] and the Court will rule on the papers submitted, and without oral argument, pursuant to Federal Rule of Bankruptcy Procedure 8012.  For the foregoing reasons, the Bankruptcy Court's order will be affirmed.

**I.**

This appeal arises from a long and acrimonious bankruptcy proceeding – originally filed under Chapter 11 and thereafter converted to Chapter 7 – which features litigation in two separate forums between at least a dozen different parties.  This appeal is relevant to eight of those parties: the debtor, Ralph M. Day, Sr. ("the debtor"); his wife, Virginia Day; Robert B. Wasserman, the Chapter 7 trustee and Appellee here ("the Trustee"); Charles Shaw, Special Counsel to the debtor and, at all times relevant to this appeal, the trustee; and four defendants in a state court litigation initiated by the Trustee on behalf of the debtor's estate (who are the Appellants here).

As indicated, the underlying litigation has been protracted and contentious.  This appeal, however, is relatively circumscribed, and the facts relevant to it brief.  In his capacity as trustee in bankruptcy for the debtor's estate, Appellee Wasserman brought suit in the Superior Court of New Jersey on May 20, 2009 (the "state action") to recover certain monies for the benefit of the estate.  The lawsuit was authorized by the Bankruptcy Court and filed by Shaw, as court-appointed Special Counsel to the Trustee ("Special Counsel"); the suit originally named the Debtor and his wife, Virginia ("Virginia"),[2] as plaintiffs, and through amendment the Trustee

---

[1] Shaw and the Law Offices of Charles Shaw PC participated in all stages of the bankruptcy adversary proceeding below, and requested leave to file a brief in support of affirmance here. The request was unopposed, and leave to file was granted by Order dated April 16, 2014. [Docket Entry 5.]

[2] The Court uses Virginia Day's given name out of necessity.

2

replaced the Debtor in the caption. Broadly speaking, the state action raised an encyclopedia of claims against various individuals and entities involved in real estate enterprises operated by the debtor and Appellant Louis A. Capazzi, Jr. ("Capazzi"). A number of the named defendants, including a real estate attorney, two notaries public, and two title insurance companies eventually settled out of the state case, and those settlements were approved by the Bankruptcy Court.

Appellants here are the only defendants in the state action who did not resolve the Trustee's claims against them by way of settlement. During the pendency of the state action, Appellants twice filed a battery of counterclaims against the Debtor, Virginia, and the Trustee.[3] Appellants filed these counterclaims, characterized by the Bankruptcy Court as "one or another reverse view" of "the same basic real estate ventures complained of by the trustee,"[4] without first seeking leave of the Bankruptcy Court; the counterclaims were dismissed by the Superior Court of New Jersey in June 2013. Specifically, the state court found that (1) all counterclaims against the Debtor were filed in violation of the automatic stay, 11 U.S.C. § 362; (2) all counterclaims against the Trustee were filed in violation of the federal common law Barton doctrine, which requires litigants to seek leave of the bankruptcy court before suing its trustee in a non-appointing forum; and (3) there were no allegations directed at Virginia such that any claim against her could be pursued. (See Virginia Day et al. v. Louis A. Capazzi, Jr., et al., Docket No. L-4604-09, June 4, 2013 Op., at 28-31 (N.J. Sup. Ct. Law Div.) ("June 4, 2013 Opinion").)[5] The

---

[3] In addition to the counterclaims against the Trustee, debtor, and the debtor's wife, Appellants also moved before the state court for leave to file a third party complaint against the Special Counsel and to add claims against the Debtor in his personal capacity. Like Appellants' counterclaims, this motion was filed without first seeking leave of the Bankruptcy Court.

[4] Appellants countersuit included, among other causes of action, claims for fraud, breach of a venture agreement, conversion of real property, and specific performance.

[5] The state court initially dismissed Appellants' claims with prejudice. After Appellants moved for reconsideration of that decision, the state court revised its order to make the dismissal

3

June 4, 2013 Opinion also terminated the Trustee's lawsuit by way of summary judgment, with the state court finding that "four years of discovery and motion practice [have] revealed that Plaintiffs' lawsuit against Defendants rested on little more than a business disagreement . . . ." See id. at 31.  The state court also expressly held that "Defendants have failed to submit any facts upon which a jury could find that [the Trustee] pursued the lawsuit in bad faith."  Id.

By way of a complaint and Order to Show Cause filed by the Trustee in late September 2013, the parties' dispute migrated back to the Bankruptcy Court.  The Trustee's complaint sought to permanently enjoin Appellants from (1) pursuing in state court their counterclaims against the Trustee, the debtor, and the debtor's wife; (2) filing the proposed Third Party Complaint against the Special Counsel; and (3) pursuing state law frivolous litigation sanctions against the Trustee and the Special Counsel.  In response, Appellants filed a cross-motion for leave to pursue frivolous litigation sanctions against the Trustee and Special Counsel under New Jersey Court Rule 1:4-8 and the Frivolous Litigation Act, N.J. Stat. Ann. § 2A:15-59.1.  Appellants also requested leave to file in state court a proposed nineteen-count complaint against the debtor, Virginia, the Trustee, and the Special Counsel.

In sum and substance, the proposed complaint and frivolous litigation claims rehash the claims Appellants had already filed in the state action.  Thus, practically speaking the Bankruptcy Court Order appealed from here resolved one overarching issue: could the Appellants pursue in the state case a battery of counterclaims and frivolous litigation sanctions against the Trustee, the Special Counsel, the Debtor, and Virginia.  (See Mov. Br. at 14 ("[Appellants] should be granted leave to pursue their state court claims and causes of action.").)

---

"without prejudice," absolving what the state court viewed as the due process concerns implicated by the dismissal of the countersuit without Appellants' opportunity to litigate it. (Virginia Day et al. v. Louis A. Capazzi, Jr., et al., Docket No. L-4604-09, August 1, 2013 Op., at 6 (N.J. Sup. Ct. Law Div.) ("Aug. 1, 2013 Opinion").)

4

The Bankruptcy Court answered that question in the negative. According to the Bankruptcy Court, neither the proposed countersuit against the Trustee and Special Counsel nor the frivolous ligation claims had any foundation whatsoever; consequently, the Barton doctrine, in concert with "applicable immunities," operated to bar those claims. In re Day, No. 08-18384 (MS), 2014 WL 636797, at *27 (Bankr. D.N.J. Feb. 7, 2014). The Bankruptcy Court further concluded that Appellants could not pursue the Debtor for frivolous litigation sanctions in state court because the Debtor was never actually a party to the state action. Moreover, any proposed claims against the Debtor lacked foundation and, in all events, the automatic stay and bankruptcy discharge operated to bar any claims against him. Id. Finally, the Bankruptcy Court found that insofar as all proposed claims were without foundation as to the Trustee and Special Counsel, such claims were equally if not more baseless as to Virginia, who was named in the state action only to avoid the risk of failing to name a potentially "indispensable party . . . ." See id. at *27 & n.2.

Each of these conclusions is challenged on appeal.

## II.

28 U.S.C. § 158(a)(1) empowers district courts to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. This Court has jurisdiction over the present appeal because the February 7, 2014 order is a final order that conclusively resolved the bankruptcy adversary proceeding initiated by Appellee. As the Third Circuit has explained,

> [o]utside of the bankruptcy context, an order is generally considered final and appealable only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945). The strict rule of finality is relaxed in bankruptcy cases, however, because a single bankruptcy case can encompass a number of "functionally distinct cases." In re Lopez, 116 F.3d 1191, 1193 (7th Cir. 1997). Accordingly, an order is considered final in a bankruptcy case when it finally resolves a particular adversary proceeding or resolves the status of a particular claim against the

5

> estate.  See id.; In re Saco Local Dev. Corp., 711 F.2d 441, 445–46
> (1st Cir.1983) (Breyer, J.) ("[A] 'final judgment, order, or decree' .
> . . includes an order that conclusively determines a separable
> dispute over a creditor's claim or priority.").

In re Anthanassious, 418 F. App'x 91, 94-95 (3d Cir. 2011).  The Bankruptcy Court's factual findings are reviewed under a clearly erroneous standard, and its legal determinations receive plenary review.  In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir. 1998); Fed. R. Bankr. P. 8013.  A decision that grants a party leave to sue the bankruptcy trustee in a non-appointing court, or refuses that permission, is reviewed for abuse of discretion.  In re VistaCare Group, LLC, 678 F.3d 218, 224 (3d Cir. 2012).

### III.

Appellants assert the Bankruptcy Court committed reversible error by relying on the Barton doctrine in concert with quasi-judicial immunity to bar their proposed claims and litigation sanctions motions against the Trustee and the Special Counsel. [6]  They challenge the decision to invoke the Barton doctrine, and the manner in which it was applied, on a number of different grounds.  Appellants, however, appear to disregard the elephant in the room – their decision to initially flout the Barton doctrine by countersuing the Trustee and Special Counsel in the state action without first seeking leave of the Bankruptcy Court to do so.  The Bankruptcy Court held that this amounted to an incurable violation of the Barton doctrine.  In re Day, 2014 WL 636797, at *25 (citing In re Summit Metals, Inc., 477 B.R. 484, 497-98 (Bankr. D. Del. 2012)).  This conclusion will be affirmed.

---

[6] All parties to this appeal properly treat the Trustee and the Special Counsel as interchangeable for purposes of the Barton doctrine analysis.  See In re Delorean Motor Co., 991 F.2d 1236, 1241 (6th Cir. 1993) ("counsel for [the] trustee, court appointed officers who represent the estate, are the functional equivalent of the trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets" (citing In re Balboa Improvements, Ltd., 99 B.R. 966, 970 (B.A.P. 9th Cir. 1989))).

6

Initially, however, a brief overview of the landscape. The Barton doctrine is federal common law which provides that "before a suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." VistaCare, 678 F.3d at 224 (quoting Barton v. Barbour, 104 U.S. 126, 128 (1881)). Subject to two limited exceptions not applicable here, Barton applies to suits against a bankruptcy trustee in a non-bankruptcy forum "for acts done in the trustee's official capacity." Id. (noting that every circuit to have spoken on the issue has found Barton applicable to trustees in bankruptcy). In the Third Circuit, "[a] party seeking leave of [the bankruptcy] court to sue a trustee" in another forum "'must make a prima facie case against the trustee [in the bankruptcy court], showing that its claim is not without foundation.'" 678 F.3d at 232 (quoting In re Nat'l Molding Co., 230 F.2d 69, 71 (3d Cir. 1956)). The "not without foundation" standard is "similar to" but more flexible than the standard employed to evaluate a motion to dismiss. See id.

As the VistaCare panel explains, the Barton doctrine is underpinned by a number of important policy concerns. A suit against a trustee could, for instance, threaten the bankruptcy estate's assets. See id. ("a judgment against the receiver in his capacity as receiver" obtained without leave of the appointing court would effectively take receivership property from the receiver's hands "without regard to the rights of other creditors or the orders of the court which [was] administering the trust property" (quoting Barton, 104 U.S. at 128-29)). But just distribution of estate property is only one concern. Barton operates to protect estate creditors by preventing the trustee from "being burdened by having to defend against suits in other courts," which would of course distract from the trustee's duties vis a vis the estate. See id. at 230. Importantly, the Barton doctrine recognizes that "without a court approval requirement [for suits in non-appointing courts], trusteeship would become a 'more irksome duty,' thereby

7

discouraging qualified people from serving as trustees.'" Id. (quoting In re Linton, 136 F.3d 544, 545 (7th Cir. 1998)). Barton also enables bankruptcy courts to more closely monitor their court-appointed trustees and helps these courts ensure "that the trustee is satisfying his obligations." See id. A bankruptcy trustee is not simply "just another advocate that" appears before the bankruptcy court; the trustee is "an officer of the bankruptcy court," and Barton provides a mechanism for that officer's conduct to be supervised. See id. at 229-30.

Thus, the law in Third Circuit is clear – for numerous salutary reasons related to the protection of the both bankruptcy estate and the bankruptcy process, those who wish to sue a trustee in another forum have to ask the bankruptcy court for permission. It is therefore readily apparent that Appellants' claims should not have been filed in the Superior Court of New Jersey before first seeking leave from the Bankruptcy Court to do so. VistaCare, 678 F.3d at 232.

The question then becomes whether Appellants' after-the-fact request to counter-sue the Trustee and Special Counsel operated to "cure the initial, errant filing[s]." Summit Metals, 477 B.R. at 497. As the Bankruptcy Court correctly concluded, it did not. The Trustee and the Special Counsel highlight a number of cases in which this approach – sue the Trustee in another forum first and then seek permission of the Bankruptcy Court – has been rejected. See id. at 497-98 ("Only by requiring any potential plaintiff to always start in the bankruptcy court . . . can the process, and the trustees, most consistently be protected." (internal quotation omitted)); In re Triple S Restaurants, Inc., 342 B.R. 508, 512 (Bankr. W.D. Ken. 2006)), aff'd, 519 F.3d 575 (6th Cir. 2008); In re Biebel, Bankr. No. 02-32865 (LMW), 2009 WL 1451637, at *6 (Bankr. D. Conn. May 20, 2009) ("Since . . . leave was not sought prior to instituting the Defendant's Action, such action must be permanently enjoined."). Appellants fail to suggest a persuasive reason and do not cite any case law to explain why this Court should conclude otherwise now.

The Barton doctrine benefits the bankruptcy process by shielding the trustee from extra-forum litigation except where the appointing bankruptcy court gives the ok; this gatekeeping function empowers bankruptcy courts "to monitor the work of the trustee more effectively . . . ." VistaCare, 678 F.3d at 231. That function is hampered by Appellants' shoot first, ask questions later approach, which forces a trustee to initially defend against an extra-forum suit in that other forum, distracting from the trustee's core job of administering the estate. See Summit Metals, 477 B.R. at 498 ("The trustee should not have to expend resources . . . to file a motion to dismiss in the non-bankruptcy forum, educating that court about the Barton doctrine and hoping for the correct result." (quoting In re Herrera, 472 B.R. 839, 853 (Bankr. D.N.M. 2012)).

     Rather than face this glaring issue head on, Appellants focus their challenge on the very application of the Barton doctrine to certain of their claims. Specifically, Appellants contend that because they seek, among other things, frivolous litigation sanctions under New Jersey law, the Barton doctrine can be ignored. (Appellants Br. at 15.) Appellants' argument on this score is based on In re Ridley Owens, Inc., a decision from the Northern District of Florida in which the bankruptcy court refused to extend the Barton doctrine "to require parties who are not creditors to seek leave of [the bankruptcy] court before requesting monetary sanctions in a lawsuit instituted by the trustee against them in state court." See 391 B.R. 867, 872 (Bankr. N.D. Fla. 2008). But Ridley Owens is neither binding nor persuasive authority, and does not carry the day here.

     First, that case is factually distinct, insofar as the state court there had already found that the trustee's claims were groundless and issued an order reprimanding the trustee for filing a lawsuit in the face of unambiguous and binding precedent fatal to her case. See id. at 870 (stating that plaintiff's counsel had been informed prior to filing suit of a Florida Supreme Court

9

decision that precluded the exact legal theory pursued in state court on behalf of the estate). Consequently, concerns over the bankruptcy court "usurping the powers of a state court" and assuming "*de facto* control over state court proceedings involving bankruptcy trustees," see id. at 873, were more prevalent in Ridley Owens, in light of the state court's determination that that the trustee there has misused its forum.  The opposite is true in this case, where the Superior Court of New Jersey explicitly found that "Defendants [Appellants here] have failed to submit any facts upon which a jury could find that [the Trustee] pursued the lawsuit in bad faith."  June 4, 2013 Op., at 31.[7]

      The logic employed in Ridley Owens is also inconsistent.  The decision proceeds from the assumption that "the Barton doctrine rests on the premise that the bankruptcy court retains exclusive *in rem* jurisdiction over the property of the estate."  Ridley Owens, 391 B.R. at 871. But Ridley Owens later disregards this key policy consideration, finding that a state court suit for sanctions would not disincentivize capable individuals from serving as trustees because any funds paid to satisfy a sanctions judgment  "will come from the estate," and not the trustee personally.  Id. at 873.  Such a judgment would thus imperil estate property without the Bankruptcy Court's imprimatur, one of the primary concerns underpinning Barton.  It also stands to reason that sanctions suits would still provide a disincentive to putative trustees regardless of who pays a judgment, insofar as the trustee would still face the prospect of having to take the time away from bankruptcy court duties to defend against the action.  See VistaCare, 678 F.3d at

---

[7] The state court defendants in Ridley Owens also came to the bankruptcy court with cleaner hands than the Appellants here.  Appellants moved for sanctions in state court well before seeking leave of the Bankruptcy Court to do so, and apparently only asked for permission after being hauled before Judge Stern on an Order to Show Cause; in contrast, the defendants in Ridley Owens moved for leave of the bankruptcy court prior to seeking state court sanctions, on their own accord and out of "an abundance of caution."  See 391 B.R. at 870.

10

230 (focusing on the time spent defending an extra-forum lawsuit and noting that bankruptcy court screening makes trusteeship less "irksome").

In sum, nothing in <u>Barton</u> or <u>VistaCare</u> purports to distinguish between the types of claims brought against the trustee in a non-appointing court; furthermore, Appellants do not cogently explain why the policy considerations undergirding the <u>Barton</u> doctrine – protection of the estate, minimizing disincentives to serve as a trustee, and empowering bankruptcy courts to monitor their officers – are not applicable to frivolous litigation-type claims.  See <u>In re Jasmine Networks</u>, Bankr. No. 02-54815-MM, 2006 WL 3392062, at *3 (Bankr. N.D. Cal. Nov. 20, 2006) (holding that <u>Barton</u> applies to a state court contempt proceeding against a trustee because "monetary sanctions alone" will affect administration of the bankruptcy estate and "prosecution of the contempt proceeding" will have a "chilling effect" upon the estate and trustee). Consequently, the Bankruptcy Court did not err by screening Appellants' litigation sanctions request pursuant to <u>Barton</u>.  This Court notes that such a procedure will not insulate bankruptcy trustees or their lawyers from the ramifications of their misconduct during litigation conducted on behalf of the estate in other forums; it only predicates litigation conduct-based claims on a showing before the bankruptcy court of the foundation for the necessary "prima facie" case.  See <u>VistaCare</u>, 678 F.3d at 232.  This slight hurdle does not seem onerous, in light of the salutary purposes of <u>Barton</u> and its progeny.

Moreover, to the extent that it is necessary to review the Bankruptcy Court's application of the Barton doctrine for abuse of discretion, <u>VistaCare</u>, 678 F.3d at 232, this Court finds that nothing in the record to demonstrate the Bankruptcy Court's decision was "arbitrary, fanciful, or clearly unreasonable . . . ."  See <u>id.</u>  Without revisiting the Bankruptcy Court's meticulous Opinion in too great detail, it is readily apparent that Bankruptcy Court viewed Appellants'

11

nineteen-count proposed Complaint and various frivolous litigation motions as premised upon misstatements of fact, matters "decided and put to rest by the bankruptcy court," prepetition claims against the Debtor, and efforts to "unsettle" previously approved settlements. In re Day, 2014 WL 636797, at *14-16. In other words, the Bankruptcy Court "balance[ed] . . . the interests of the parties involved" and determined that it, and not the Superior Court of New Jersey, was better suited to weigh "the issues in the proposed suit" and reject them. VistaCare, 678 F.3d at 233 (quoting In re Kashani, 190 B.R. 875, 886-87 (B.A.P. 9th Cir. 1995)). And this Court finds nothing in the record to upset that balance or determination.

Appellants certainly take issue with the manner in which the Bankruptcy Court reached its conclusion (see Mov. Br. at 12-14); Appellants fail, however, to demonstrate the existence of any foundation for their claims that was overlooked by the Bankruptcy Court. Indeed, besides the frivolous litigation assertions, one could read the Appellants' brief and have little idea what they wanted to sue the Trustee over. Something more is required on appeal, especially considering the Bankruptcy Court's "familiarity with the underlying facts and the parties" and its "unique[]" position to "determine whether a claim against the trustee has merit." VistaCare, 678 F.3d at 233.

Appellants also cite to the state court's decision to dismiss their counterclaims "without prejudice" as proof that the Bankruptcy Court erred in determining those claims were without foundation. (Mov. Br. at 23-24.) Specifically, Appellants quote from the Superior Court of New Jersey's August 1, 2013 Opinion, in which the court "finds that significant evidence exists upon which the Durie Defendants' [*i.e.*, Appellants'] Counterclaims may be grounded" and chooses not to dismiss those counterclaims with prejudice "absent providing opportunity to the Durie Defendants to litigate their claims." (Aug. 1, 2013 Op., at 6.) Appellants' suggestion that this

statement had any preclusive or binding effect on the Bankruptcy Court's Barton doctrine analysis is absurd. (See Mov. Br. at 23 (invoking res judicata, collateral estoppel, law of the case, and the Rooker-Feldman Doctrine).) As the Bankruptcy Court correctly held, the state court's belief that there is a foundation in evidence for certain claims does not by itself create such a foundation if the evidence supposedly underpinning those claims is non-existent. Moreover, to the extent the state court dismissed Appellants' counterclaims without prejudice to provide them an opportunity to "litigate" those claims, Appellants received such an opportunity when they presented their claims to the Bankruptcy Court pursuant to Barton. Presumably, the "significant evidence" the state court was referring to would have been proffered to the Bankruptcy Court during the Barton process if any such evidence existed.

Finally, this Court does not find that the Bankruptcy Court erred in considering the Trustee's quasi-judicial immunity in its analysis of the Barton doctrine. Appellants read the Third Circuit's VistaCare decision to stand for the proposition that "a judicial determination . . . in the context of a Barton application as to an immunity defense is both premature and inappropriate . . . ." (Mov. Br. at 31-32.) But VistaCare is not subject to such a strained interpretation. VistaCare only referenced immunity to reject the contention that a bankruptcy court must consider as part of the Barton analysis whether a trustee is "entitled to immunity for the challenged actions." See 678 F.3d at 234. The Third Circuit concluded that a bankruptcy court is "not required to consider immunities and defense raised by a trustee when evaluating a motion for leave" and that Barton only requires the bankruptcy court "satisfy itself the [proposed] claim is not without foundation," not conduct a trial on the merits of that claim. See VistaCare, 678 F.3d at 234-35 (internal quotation and marks omitted). This is a far cry from holding that applicable immunities could never be examined relative to an inquiry in the

foundation (or lack thereof) of a claim. Here, the Bankruptcy Court was well within its discretion to consider principles of quasi-judicial immunity in conjunction with Appellants' calculated violation of the <u>Barton</u> doctrine and automatic stay, and find that such principles critically undermined the facial viability of Appellants' proposed claims.

In sum, the Bankruptcy Court properly held that Appellants' decision to pursue affirmative litigation against the Trustee and Special Counsel before seeking leave to do so amounted to a flagrant and incurable violation of the <u>Barton</u> doctrine. Furthermore, the Bankruptcy Court did not err by screening Appellants' claims for sanctions pursuant to <u>Barton</u>, and the Bankruptcy Court's overall application of the <u>Barton</u> doctrine was comfortably within that court's discretion. The decision to enjoin all claims against the Trustee and the Special Counsel will therefore be affirmed.

## IV.

The remaining issues presented in this appeal do not warrant significant treatment. The Bankruptcy Court rejected the proposed frivolous litigation claims against the debtor because the debtor was never a party to the state action. This appears to be the proper characterization of that case; indeed, the state court's June 4, 2013 opinion states as much. (<u>See</u> June 4, 2013 Op., at 1 ("On April 14, 2009, Plaintiffs Virginia Day . . . and Robert Wasserman, Esq. . . . as Chapter 7 trustee for Ralph Day, Senior . . . filed their Complaint.").) Any arguments regarding the debtor's allegedly frivolous post-petition litigation conduct are therefore meritless. So too are arguments regarding whether leave to countersue a debtor in bankruptcy is granted as a matter of course when the debtor institutes an offensive action in another forum, (<u>see</u> Mov. Br. at 40), for the simple fact that the debtor never brought such an action here.[8]

---

[8] To the extent the proposed Complaint seeks liability for the debtor's alleged pre-petition conduct, this Court agrees with the Bankruptcy Court that such conduct would be subject to the

14

As to Virginia Day, the Bankruptcy Court expressly provided for no affirmative relief in her regard, see In re Day, 2014 WL 636797, at *27, and the February 7, 2014 Order being appealed from does not specifically pertain to her except insofar as she was a named plaintiff in the caption of the proposed Complaint enjoined by that order.  Appellants' arguments in her regard are therefore irrelevant to this appeal.  The Court will note that Appellants' proposed Complaint, much like the countersuit against Virginia that was dismissed from the state action, contains no factual allegations regarding Virginia specifically.  It instead appears that at both the state and bankruptcy court levels Virginia was included in Appellants' putative lawsuit because she was named as a plaintiff when the Trustee initiated the state action.  How a lawsuit against her individually could proceed is unclear, when Virginia's only relevance to the case is as a name included in the state action's caption out of an abundance of caution.  See In re Day, 2014 WL 636797, at *1 n.2 (noting that Virginia was named as a plaintiff to avoid the risk of omitting a potentially indispensable party).  More clear is that the Bankruptcy Court's discussion about and treatment of Virginia do not constitute grounds to reverse the Bankruptcy Court's Order.

## V.

For the foregoing reasons, the Bankruptcy Court's February 7, 2014 Order will be affirmed.  An appropriate Order follows.


    s/ Stanley R. Chesler
    STANLEY R. CHESLER
    United States District Judge

Dated:  August 28th, 2014

---

statutory discharge injunction.  See 11 U.S.C. § 524(a).  Appellants failed to move before the Bankruptcy Court to except claims from the debtor's discharge, and do no suggest a cogent reason to revisit and upset the discharge now.